Kennedy, J.
I. Introduction
{¶ 1} In this opinion we address (1) a discretionary appeal by Hospice of Southwest Ohio, Inc. (“Hospice”), Joseph Killian, Hospice’s chief executive officer, and Brookdale Senior Living, Inc. (“Brookdale”), (2) a cross-appeal by Patricia Hulsmeyer, and (3) a certified-conflict case from the First District Court of Appeals. The conflict certified by the court of appeals is whether “an employee or another individual used by a person or government entity to perform work or services [must] report or indicate an intention to report suspected abuse or neglect of a nursing home resident to the Ohio Director of Health to state a claim *237 for retaliation under R.C. 3721.24(A).” Appellants and cross-appellees assert the following proposition of law: “R.C. 3721.24 and 3721.22 are related statutes that should be read together and, when read together, a claim for retaliation under R.C. 3721.24 requires a person reporting suspected abuse or neglect to make that report to the Director of Health.”
{¶ 2} On cross-appeal, Hulsmeyer asserts the following proposition of law: “If R.C. § 3721.24 protects only employees or other persons who make reports of suspected abuse or neglect of a resident to the Director of Health, then persons who make such reports to an employer, to a family member of the resident, to law enforcement, or to other appropriate persons or entities must be permitted to assert claims for retaliation in violation of public policy.”
{¶ 3} Initially, we address an issue regarding the certified question that was not raised by any party and does not change the outcome in this case but that we believe needs to be addressed to ensure the clarity of our holding. The issue certified as being in conflict contemplates reporting suspected abuse or neglect of a “nursing home resident.” R.C. 3721.24 discusses reporting abuse of a “resident,” and “resident” is defined in R.C. 3721.21(F) as including “a resident, patient, former resident or patient, or deceased resident or patient of a long-term care facility or a residential care facility.” (Emphasis added.) Accordingly, we modify the issue certified as follows:
Must an employee or another individual used by a person or government entity to perform work or services make a report or indicate an intention to report suspected abuse or neglect of a long-term-care-facility or a residential-care-facility resident to the Ohio Director of Health to state a claim for retaliation under R.C. 3721.24(A)?
{¶ 4} We answer the certified question in the negative and hold that an employee or other person used to perform work or services who reports or indicates an intention to report suspected abuse or neglect of a long-term-care-facility or a residential-care-facility resident is not required to report or indicate an intent to report the suspected abuse or neglect to the Ohio director of health in order to state a claim for retaliatory discharge under R.C. 3721.24. Because we hold that Hulsmeyer has stated a cognizable retaliatory-discharge claim under R.C. 3721.24, we decline to address her cross-appeal. Accordingly, we affirm the judgment of the court of appeals.
II. Facts and Procedural History
{¶ 5} Hospice is an organization that provides nursing care for persons who are terminally ill. Hospice does not have its own facility to provide inpatient care in *238 southwest Ohio. Instead, it provides nursing care to patients where they live. In 2011, Hospice provided care to residents of a residential care facility owned by Brookdale, including Pat Cinquina, an 81-year-old woman.
{¶ 6} Because Hulsmeyer’s claims were resolved on a motion to dismiss for failure to state a claim, in reviewing this case, we accept as true all material allegations in her complaint and construe all reasonable inferences in her favor. Mitchell v. Lawson Milk Co., 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). In April 2010, Hospice hired Patricia Hulsmeyer as a registered-nurse case manager. Eight months later, Hulsmeyer was promoted to team manager. As a team manager, Hulsmeyer oversaw the care of Hospice patients and monitored the work of other Hospice nurses and aides. At an October 19, 2011 patient-care meeting, a Hospice nurse indicated that she had noticed bruising on Cinquina and that she suspected that abuse or neglect by Brookdale’s staff had caused the bruises. Rachel Brown, an aide, divulged that she had used her cell phone to take pictures of bruising on Cinquina’s body. Brown forwarded the pictures to Hulsmeyer’s phone. A Hospice nurse and staff doctor at the meeting advised Hulsmeyer that she was obligated to notify Brookdale and Cinquina’s family of the suspected abuse or neglect. Hulsmeyer immediately called Brookdale and reported the suspected abuse or neglect to Cindy Spaunagle, Brookdale’s director of nursing, who indicated that she would examine Cinquina and then contact Cinquina’s daughter after the examination. Hulsmeyer then informed Isha Abdullah, the chief clinical officer of Hospice, of the suspected abuse or neglect. And after she left Abdullah’s office, Hulsmeyer informed Cinquina’s daughter of the suspected abuse or neglect.
{¶ 7} At a November 2011 meeting at Brookdale to discuss Cinquina’s care, Brown’s cell phone was passed around so that the photo of Cinquina’s bruising could be seen. Attending the meeting were Hulsmeyer, Spaunagle, nurses, Cinquina’s son and daughter, and others.
{¶ 8} Contrary to the assertion in Hulsmeyer’s complaint, Abdullah claimed in a deposition that she did not learn of the suspected abuse or neglect until she received a call from a Brookdale employee. Abdullah claimed that Hulsmeyer violated Hospice’s company policy by not first reporting the suspected abuse or neglect to Hospice management.
{¶ 9} On November 30, 2011, Hospice terminated Hulsmeyer. The termination letter stated that Hospice has a “policy that states, ‘All suspected abuse, neglect or exploitation of patients and suspected abuse or neglect of children will be reported immediately to CEO/designee.’ ” The letter gives three reasons for Hulsmeyer’s discharge: (1) Hulsmeyer permitted photos of Cinquina to be taken without receiving authorization from a person with power of attorney, (2) Hulsmeyer notified Brookdale and Cinquina’s daughter of the suspected abuse or *239 neglect without first notifying Hospice, in violation of Hospice’s policy, and (3) Hulsmeyer improperly shared the photos at a patient-care conference to discuss Cinquina’s care, which was attended by staff from both Hospice and Brookdale and Cinquina’s family, before informing Hospice of the suspected abuse or neglect.
{¶ 10} On the termination letter, next to the word “Comments” is the following handwritten statement by Hulsmeyer:
I do not agree with the above statement. I was not provided guidance by my superiors in regards to the policy regarding suspected abuse/neglect. I reported the concerns that were brought to my attention on 10/19 to Isha Abdulla[h], CCO. I asked her for direction on how to handle the situation. I told her that social work and the team [doctor] stated I should and was obligated to notify the facility and the family of the concerns. She did not discourage me from doing so.
I did not authorize photos of the patient to be taken any time.
{¶ 11} Hulsmeyer filed a civil action seeking damages against Hospice, Joseph Killian, and Brookdale. The complaint alleged that she had a statutory retaliatory-discharge claim under R.C. 3721.24 and a common-law wrongful-discharge claim against Hospice and Killian for firing her for reporting suspected abuse or neglect and against Brookdale for inducing Hospice to fire her. Hospice, Killian, and Brookdale filed motions to dismiss alleging that Hulsmeyer’s statutory retaliatory-discharge claim failed to state a claim upon which relief could be granted. The motions to dismiss alleged that an employee may file a retaliatory-discharge claim under R.C. 3721.24 only if the employee reported the suspected abuse or neglect to the Ohio director of health, which Hulsmeyer did not do. The trial court agreed and granted the motions to dismiss regarding Hulsmeyer’s retaliatory-discharge claims under R.C. 3721.24. The trial court also held that Hulsmeyer’s common-law wrongful-discharge claim failed to state a claim because R.C. 3721.24 was an adequate statutory remedy to protect society’s interests in encouraging employees to report suspected abuse or neglect.
{¶ 12} Hulsmeyer appealed. The court of appeals reversed the trial court’s judgment in part and affirmed it in part. The court of appeals reversed the trial court’s judgment to the extent that it dismissed Hulsmeyer’s statutory retaliatory-discharge claim. The court of appeals held that the plain language of R.C. 3721.24(A) does not require an employee or other person to report suspected abuse or neglect to the Ohio director of health in order to be protected from retaliation. However, the court of appeals affirmed the trial court judgment to the extent that it dismissed Hulsmeyer’s common-law wrongful-discharge claim.
*240 {¶ 13} We accepted Hospice, Killian, and Brookdale’s joint discretionary appeal and Hulsmeyer’s cross-appeal. 138 Ohio St.3d 1412, 2014-Ohio-566, 3 N.E.3d 1215. We also determined that a conflict exists and consolidated the cases. Id.
III. Analysis
{¶ 14} R.C. 3721.24 provides a retaliatory-discharge cause of action for employees who are terminated for reporting or indicating an intention to report suspected abuse or neglect of long-term-care-facility or residential-care-facility residents. The question is whether the report of suspected abuse or neglect must be made to the director of health in order to state a cognizable retaliatory-discharge claim.
{¶ 15} Hospice, Killian, and Brookdale (hereinafter referred to collectively as “defendants”) argue that R.C. 3721.24 is ambiguous because it does not indicate to whom an employee must report or intend to report suspected abuse or neglect. Therefore, defendants argue, we should interpret R.C. 3721.24 by reading it in pari materia with R.C. 3721.22 and hold that an employee must report or indicate an intention to report the suspected abuse or neglect to the director of health in order to have a cognizable retaliatory-discharge claim under R.C. 3721.24.
{¶ 16} Hulsmeyer counters that there is no need to interpret R.C. 3721.24 because its plain language does not limit to whom a report of suspected abuse or neglect must be made. Aternatively, in her cross-appeal, Hulsmeyer argues that if the court holds that an employee has a cognizable retaliatory-discharge claim under R.C. 3721.24 only if the employee reports or intends to report the suspected abuse or neglect to the Ohio director of health, then the court should recognize a common-law wrongful-discharge cause of action if the employee suffers retaliation for making the report or intending to make the report to someone other than the director of health.
A. R.C. 3721.22 and 3721.24
{¶ 17} In 1990, the General Assembly passed Am.Sub.H.B. No. 822, which enacted R.C. 3721.22 and 3721.24. Am.Sub.H.B. 822, 143 Ohio Laws, Part IV, 6652, 6689, 6692.
{¶ 18} We begin our analysis by examining R.C. 3721.24, the provision in question, and R.C. 3721.22, the provision that defendants argue is pivotal in construing R.C. 3721.24.
{¶ 19} R.C. 3721.22 states:
(A) No licensed health professional who knows or suspects that a resident has been abused or neglected, or that a resident’s property has been misappropriated, by any individual used by a long-term care facility *241 or residential care facility to provide services to residents, shall fail to report that knowledge or suspicion to the director of health.
(B) Any person, including a resident, who knows or suspects that a resident has been abused or neglected, or that a resident’s property has been misappropriated, by any individual used by a long-term care facility or residential care facility to provide services to residents, may report that knowledge or suspicion to the director of health.
(C) Any person who in good faith reports suspected abuse, neglect, or misappropriation to the director of health, provides information during an investigation of suspected abuse, neglect, or misappropriation conducted by the director, or participates in a hearing conducted under section 3721.23 of the Revised Code is not subject to criminal prosecution, liable in damages in a tort or other civil action, or subject to professional disciplinary action because of injury or loss to person or property allegedly arising from the making of the report, provision of information, or participation in the hearing.
(D) If the director has reason to believe that a violation of division (A) of this section has occurred, the director may report the suspected violation to the appropriate professional licensing authority and to the attorney general, county prosecutor, or other appropriate law enforcement official.
(E) No person shall knowingly make a false allegation of abuse or neglect of a resident or misappropriation of a resident’s property, or knowingly swear or affirm the truth of a false allegation, when the allegation is made for the purpose of incriminating another.
(Emphasis added.)
{¶ 20} R.C. 3721.24 states:
(A) No person or government entity shall retaliate against an employee or another individual used by the person or government entity to perform any work or services who, in good faith, makes a report of suspected abuse or neglect of a resident or misappropriation of the property of a resident; indicates an intention to make such a report; provides information during an investigation of suspected abuse, neglect, or misappropriation conducted by the director of health; or participates in a hearing conducted under section 3721.23 of the Revised Code or in any other administrative or judicial proceedings pertaining to the suspected abuse, neglect, or misappropriation. For purposes of this division, retaliatory actions include discharging, demoting, or transferring the employee or other person, *242 preparing a negative work performance evaluation of the employee or other person, reducing the benefits, pay, or work privileges of the employee or other person, and any other action intended to retaliate against the employee or other person.
(B) No person or government entity shall retaliate against a resident who reports suspected abuse, neglect, or misappropriation; indicates an intention to make such a report; provides information during an investigation of alleged abuse, neglect, or misappropriation conducted by the director; or participates in a hearing under section 3721.23 of the Revised Code or in any other administrative or judicial proceeding pertaining to the suspected abuse, neglect, or misappropriation; or on whose behalf any other person or government entity takes any of those actions. For purposes of this division, retaliatory actions include abuse, verbal threats or other harsh language, change of room assignment, withholding of services, failure to provide care in a timely manner, and any other action intended to retaliate against the resident.
(C) Any person has a cause of action against a person or government entity for harm resulting from violation of division (A) or (B) of this section. If it finds that a violation has occurred, the court may award damages and order injunctive relief. The court may award court costs and reasonable attorney’s fees to the prevailing party.
(Emphasis added.)
B. Statutory Construction
{¶ 21} The goal of statutory construction is to ascertain and give effect to the intent of the General Assembly. State v. Hairston, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 11, citing Slingluff v. Weaver, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph one of the syllabus. In determining the intent of the General Assembly, “we must first look to the statutory language and the purpose to be accomplished.” Sutton v. Tomco Machining, Inc., 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 12.
{¶ 22} When statutory language is ambiguous, the rules of statutory interpretation must be applied to determine the intent of the legislature. Wingate v. Hordge, 60 Ohio St.2d 55, 58, 396 N.E.2d 770 (1979). “The in pan materia rule of construction may be used in interpreting statutes where some doubt or ambiguity exists.” State ex rel. Herman v. Klopfleisch, 72 Ohio St.3d 581, 585, 651 N.E.2d 995 (1995), citing State Farm Mut. Auto. Ins. Co. v. Webb, 54 Ohio St.3d 61, 63-64, 562 N.E.2d 132 (1990); State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs., 32 Ohio St.3d 24, 27-28, 512 N.E.2d 332 (1987). “ ‘In reading *243 statutes in pari materia and construing them together, this court must give a reasonable construction that provides the proper effect to each statute.’ ” Blair v. Sugarcreek Twp. Bd. of Trustees, 132 Ohio St.3d 151, 2012-Ohio-2165, 970 N.E.2d 884, ¶ 18, quoting State ex rel. Cordray v. Midway Motor Sales, Inc., 122 Ohio St.3d 234, 2009-Ohio-2610, 910 N.E.2d 432, ¶ 25, citing Maxfield v. Brooks, 110 Ohio St. 566, 144 N.E. 725 (1924), paragraph two of the syllabus.
{¶ 23} However, “[w]hen the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said.” Jones v. Action Coupling & Equip., Inc., 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing Symmes Twp. Bd. of Trustees v. Smyth, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). The court must give effect to the words used, making neither additions nor deletions from words chosen by the General Assembly. Columbia Gas Transm. Corp. v. Levin, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 19, citing Cline v. Ohio Bur. of Motor Vehicles, 61 Ohio St.3d 93, 97, 573 N.E.2d 77 (1991).
C. R.C. 3721.24 Is Not Ambiguous
{¶ 24} Defendants argue that R.C. 3721.24 is ambiguous because it does not indicate to whom a report of suspected abuse or neglect must be made and that when R.C. 3721.24 is construed in pari materia with R.C. 3721.22, it is clear that in order to file a retaliatory-discharge claim, a report of suspected abuse or neglect must be made to the director of health. Defendants cite Sheet Metal Workers’ Internatl. Assn., Local Union No. 33 v. Gene’s Refrig., Heating & Air Conditioning, Inc., 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, in support of its argument that R.C. 3721.24 is ambiguous.
{¶ 25} In Sheet Metal Workers’ Internatl. Assn., the issue was whether R.C. 4115.05 requires paying the prevailing wage to an employee “whose work is not performed on the actual project site but who works on materials that will be used in or in connection with the project.” Id. at ¶ 25. The court found R.C. 4115.05 to be ambiguous on this issue because “[t]here is no reference in R.C. 4115.05 to where the work must be performed, i.e. whether it must be directly on the project site or be performed off-site.” Id. at ¶ 29. The court construed “the language of the entire prevailing-wage statutory scheme along with the related regulations” in concluding that the General Assembly did not intend for employers to pay the prevailing wage to persons who do not work on-site. Id. at ¶ 38. We find Sheet Metal Workers’ Internatl. Assn, to be distinguishable.
{¶ 26} “[T]he General Assembly, in enacting a statute, is assumed to have been aware of other statutory provisions concerning the subject matter of the enactment even if they are found in separate sections of the Code.” Meeks v. Papadopulos, 62 Ohio St.2d 187, 191-192, 404 N.E.2d 159 (1980), citing State ex rel. Darby v. Hadaway, 113 Ohio St. 658, 659, 150 N.E. 36 (1925). And the *244 General Assembly’s use of particular language to modify one part of a statute but not another part demonstrates that the General Assembly knows how to make that modification and has chosen not to make that modification in the latter part of the statute. See Maggiore v. Kovach, 101 Ohio St.3d 184, 2004-Ohio-722, 803 N.E.2d 790, ¶ 27; In re Election of Member of Rock Hill Local School Dist. Bd. of Edn., 76 Ohio St.3d 601, 608, 669 N.E.2d 1116 (1996). Finally, we have held that if the General Assembly could have used a particular word in a statute but did not, we will not add that word by judicial fiat. See In re Application of Columbus S. Power Co., 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, ¶ 26 (“The court must give effect to the words used, making neither additions nor deletions from words chosen by the General Assembly. * * * Certainly, had the General Assembly intended to require that electric-distribution utilities prove that carrying costs were ‘necessary’ before they could be recovered, it would have chosen words to that effect”).
{¶ 27} R.C. 3721.22(A) requires licensed health professionals to report abuse “to the director of health.” That same requirement of reporting to the director of health is not found in R.C. 3721.24. Because the General Assembly enacted R.C. 3721.22 and 3721.24 in the same bill, we presume that the absence of any requirement in R.C. 3721.24 that a report, or intent to report, suspected abuse or neglect must be made to the director of health was intentional. If the General Assembly had intended to afford protection to only those employees who reported, or indicated an intention to report, suspected abuse or neglect to the director of health, it could have done so by inserting the words “to the director of health” after the word “report” in R.C. 3721.24(A), or by incorporating the requirement from R.C. 3721.22. It did neither. And we will not add those words by judicial fiat. See Clark v. Scarpelli, 91 Ohio St.3d 271, 291, 744 N.E.2d 719 (2001) (Cook, J., dissenting) (“the role of a court is not to decide what the law should say; rather, the role of this court is to interpret what the law says as it has been written by the General Assembly ” [emphasis sic]).
{¶ 28} Furthermore, the different reporting requirements of R.C. 3721.22 and 3721.24 are consistent with their different purposes. In addition to providing immunity from both civil lawsuits and criminal prosecution to persons who report suspected abuse or neglect, R.C. 3721.22 addresses the obligations of reporting suspected abuse or neglect. It explicitly requires that licensed health professionals report suspected abuse or neglect “to the director of health.” R.C. 3721.22(A). It also provides that “[a]ny person, including a resident” “may” report suspected abuse or neglect “to the director of health.” R.C. 3721.22(B). The purpose of requiring that such reports be made to the director of health is that the director of health has the authority and obligation to investigate, make findings, and report findings of abuse or neglect to law enforcement. See R.C. 3721.23.
*245 {¶ 29} In contrast, the purpose of R.C. 3721.24 is to protect persons from retaliatory discharge for reporting suspected abuse or neglect of long-term-care-facility and residential-care-facility residents. See generally Dolan v. St. Mary’s Mem. Home, 153 Ohio App.3d 441, 2003-Ohio-3383, 794 N.E.2d 716, ¶ 17 (1st Dist.) (the purpose of R.C. Chapter 3721 is to protect “the rights of nursing-home residents and of others who would report violations of those rights ” [emphasis added]). Providing employees broader reporting options than those found in R.C. 3721.22 is consistent with the purpose of preventing retaliation against employees. Employees may be more likely to report suspected abuse or neglect to someone other than the director of health, such as a resident’s family member or a eoworker.
IV. Conclusion
{¶ 30} The plain language of R.C. 3721.24 protects employees or other persons used to perform work or services from retaliation for reporting or indicating an intention to report suspected abuse or neglect of residents of long-term-care facilities or residential-care facilities and does not require that the report be made to the director of health. Therefore, we answer the certified question in the negative and hold that an employee or other person used to perform work or services who reports or indicates an intention to report suspected abuse or neglect of a long-term-care-facility or residential-care-facility resident is not required to report or indicate an intent to report the suspected abuse or neglect to the Ohio director of health in order to state a claim for retaliatory discharge under R.C. 3721.24.
{¶ 31} In this case, Hulsmeyer’s reporting the suspected abuse or neglect to Brookdale and to the resident’s children triggered the protection of R.C. 3721.24. Therefore, the court of appeals did not err in reversing the portion of the trial court’s judgment that dismissed Hulsmeyer’s claim for retaliation under R.C. 3721.24. Because Hulsmeyer has a cognizable retaliatory-discharge claim under R.C. 3721.24, we decline to consider her cross-appeal asserting that she has a common-law wrongful-discharge claim.
{¶ 32} Accordingly, we affirm the judgment of the court of appeals and remand the cause to the trial court with instructions to reinstate Hulsmeyer’s retaliatory-discharge claim under R.C. 3721.24. However, although we have determined that the “report” mentioned in R.C. 3721.24 does not need to be a report to the director of health to trigger protection from retaliation, we make no judgment on the merits of Hulsmeyer’s claim. We therefore remand this cause to the trial court for further proceedings consistent with this opinion.
Judgment affirmed and cause remanded.
*246 O’Connor, C.J., and Yarbrough, Lanzinger, and O’Neill, JJ., concur.
Pfeifer, J., concurs separately.
French, J., dissents.
Stephen A. Yarbrough, J., of the Sixth Appellate District, sitting for O’Donnell, J.