Kennedy, J.,
concurring in part and dissenting in part.
{¶ 33} The orders of the Public Utilities Commission of Ohio authorizing Duke Energy Ohio, Inc. (“Duke”), to amend its corporate separation plan to permit Duke to engage in a new line of business — the offering of various nonelectric products and services to its customers — violate R.C. 4928.17, Ohio’s corporate-separation-plan statute, and the public policy announced by the General Assembly in R.C. 4928.02. Although I agree with the majority that the commission’s orders cannot be affirmed, I disagree with the majority’s reasoning and with the terms of the majority’s remand to the commission. Therefore, I respectfully dissent in part.
{¶ 34} The wording of R.C. 4928.17(C) makes clear that the intention of the General Assembly, as codified in the statutes at issue in this case, was to aid an incumbent electric utility in phasing in the requirements of electricity deregulation by providing a process for unbundling competitive and noncompetitive retail electric services over a period of time. It was not the intention of the General Assembly to permit a business that supplies noncompetitive retail electric services to, in effect, “rebundle” in order to provide new nonelectric products and services that are required to be offered through a fully separate affiliate. Accordingly, I would reverse the commission’s orders and remand the case to the commission with instructions to proceed in a manner consistent with the reasoning stated in this opinion.
{¶ 35} In 2011, the commission allowed Duke to amend its “functional” corporate separation plan so that it could have until the end of 2014 to transfer its generating assets. The commission noted in that order that when Duke finally transferred its generating assets, it would achieve “full legal corporate separation.” In re Application of Duke Energy Ohio, Inc., for Auth. to Establish a Standard Serv. Offer Pursuant to Section 1928.143, Revised Code, in the Form of an Elec. Sec. Plan, Accounting Modifications, & Tariffs for Generation Serv., Pub. Util. Comm. Nos. 11-3549-EL-SSO, 11-3550-EL-ATA, and 11-3551-EL-UNC, at 45 (Nov. 22, 2011). Nevertheless, in April 2014, Duke filed an application for approval of a fourth amended corporate separation plan, seeking to, among other things, engage in a potential new line of business: the provision *520 of nonelectric products and services. At issue in this case is whether the commission is authorized, pursuant to R.C. 4928.02 and 4928.17, to issue an order approving Duke’s amendment to its corporate separation plan to allow Duke to begin rebundling services by offering various nonelectric products and services to its customers.
{¶ 36} “The ultimate inquiry in the interpretation of statutes is to ascertain the legislative intent.” Caldwell v. State, 115 Ohio St. 458, 466, 154 N.E. 792 (1926). One of the cardinal rules of statutory construction is that we must first examine the language of the statute itself. Provident Bank v. Wood, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973). “ ‘[I]f the words [are] free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the lawmaking body, there is no occasion to resort to other means of interpretation.’ ” Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 12, quoting Slingluff v. Weaver, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. The court must give effect to the words used, making neither additions nor deletions from the words chosen by the General Assembly. Columbia Gas Transm. Corp. v. Levin, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 19, citing Cline v. Ohio Bur. of Motor Vehicles, 61 Ohio St.3d 93, 97, 573 N.E.2d 77 (1991).
{¶ 37} “ ‘[T]he General Assembly is not presumed to do a vain or useless thing, and * * * when language is inserted in a statute it is inserted to accomplish some definite purpose.’ ” State v. Wilson, 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (1997), quoting State ex rel. Cleveland Elec. Illum. Co. v. Euclid, 169 Ohio St. 476, 479, 159 N.E.2d 756 (1959). When reviewing a statute, we cannot “ ‘pick out one sentence and disassociate it from the context,’ ” but we instead must look at “ ‘the four corners of the enactment’ ” to determine the intent of the legislature. MacDonald v. Bernard, 1 Ohio St.3d 85, 89, 438 N.E.2d 410 (1982), quoting Black-Clawson Co. v. Evatt, 139 Ohio St. 100, 104, 38 N.E.2d 403 (1941).
{¶ 38} R.C. 4928.02 and 4928.17 were enacted by the General Assembly in 1999 in Am.Sub.S.B. No. 3 (“S.B. 3”), 148 Ohio Laws, Part IV, 7962; id. at 7998-7999, 8018-8020. S.B. 3 “restructured Ohio’s electric-utility industry to foster retail competition in the generation component of electric service.” Indus. Energy Users-Ohio v. Pub. Util. Comm., 117 Ohio St.3d 486, 2008-Ohio-990, 885 N.E.2d 195, ¶ 5. It also “altered the traditional rate-based regulation of electric utilities by requiring the three components of electric service — generation, transmission, and distribution—to be separated.” Id., citing Migden-Ostrander v. Pub. Util. Comm., 102 Ohio St.3d 451, 2004-Ohio-3924, 812 N.E.2d 955, ¶ 3-4.
{¶ 39} R.C. 4928.17(A) mandates that unless an electric utility operates under a corporate separation plan (“plan”) approved by the commission, the utility is prohibited from engaging in the business of supplying noncompetitive electric *521 service and supplying either competitive retail electric service or a product or service other than electric service. R.C. 4928.17(A) states that the plan must be “consistent with the policy specified in” R.C. 4928.02. The plan also must “provide[ ], at minimum, for the provision of the competitive retail electric service or the nonelectric product or service through a fully separated affiliate of the utility.” R.C. 4928.17(A)(1). Accordingly, the General Assembly expressed the intent that a noncompetitive electric utility was to be solely in the business of supplying regulated distribution service.
{¶ 40} R.C. 4928.17(C) provides that the commission is able to approve (or to modify and approve) a plan upon finding both “that the plan reasonably complies with the requirements of division (A) of this section and will provide for ongoing compliance with the policy specified in” R.C. 4928.02. However, when a plan does not comply with R.C. 4928.17(A)(1), for good cause shown, the commission may issue an order approving (or modifying and approving) the plan if the plan
complies with such functional separation requirements as the commission authorizes to apply for an interim period prescribed in the order, upon a finding that such alternative plan will provide for ongoing compliance with the policy specified in section 4928.02 of the Revised Code.
R.C. 4928.17(C).
{¶ 41} The majority states that R.C. 4928.17(C) sets forth an “exception” to R.C. 4928.17(A), majority opinion at ¶ 13, but the majority’s approach does not adequately appreciate the substantial limitations that are inherent in R.C. 4928.17(C). In enacting R.C. 4928.17(C), the General Assembly recognized that the process of unbundling the three components of electric service and achieving compliance with R.C. 4928.17(A) would take time. Accordingly, the statutory language used by the General Assembly reveals that R.C. 4928.17(C) provides for temporary noncompliance with R.C. 4928.17(A) only while the utility works toward full compliance with R.C. 4928.17(A). This is not a broad exception to R.C. 4928.17(A); it is a narrow authorization to deviate in a very limited way from the requirements of that provision.
{¶ 42} In R.C. 4928.17(A), the General Assembly set forth the exceptions to the requirements of that statute. Specifically, R.C. 4928.17(A) begins, “Except as otherwise provided in sections 4928.142 or 4928.143 or 4928.31 to 4928.40 of the Revised Code * * *.” This language signals that R.C. 4928.17(A) is not absolute; it yields to those specifically listed statutes when appropriate. See State v. Evans, 102 Ohio St.3d 240, 2004-Ohio-2659, 809 N.E.2d 11, ¶ 15. Moreover, the use of the “[e]xcept as otherwise provided in” language in R.C. 4928.17(A) *522 indicates that the General Assembly has deliberately chosen to qualify the application of that statute in certain situations.
{¶ 43} Absent from the General Assembly’s explicit statement of statutes that are not subject to the requirements of R.C. 4928.17(A) is R.C. 4928.17(C). R.C. 4928.17(A) contains no express wording stating “except as otherwise provided in division (C) of this section.” The absence of language of this type cannot be discounted. By failing to include R.C. 4928.17(C) among the stated exceptions, the General Assembly has chosen to provide that the requirements of R.C. 4928.17(A) should take precedence over the provisions of R.C. 4928.17(C), except in very limited circumstances. Because the General Assembly could have included R.C. 4928.17(C) in the “[ejxcept as otherwise provided in” language but did not, “we will not add” those words “by judicial fiat.” Hulsmeyer v. Hospice of Southwest Ohio, Inc., 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 26, citing In re Application of Columbus S. Power Co., 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, ¶ 26 (“The court must give effect to the words used, making neither additions nor deletions from words chosen by the General Assembly. * * * Certainly, had the General Assembly intended to require that electric-distribution utilities prove that carrying costs were ‘necessary’ before they could be recovered, it would have chosen words to that effect”).
{¶ 44} The language used by the General Assembly in R.C. 4928.17(C) reinforces this conclusion. The authority granted to the commission in R.C. 4928.17(C) to issue an order approving a plan that does not comply with R.C. 4928.17(A)(1) is qualified and extremely narrow. As relevant here, the plan must comply with such functional separation requirements as the commission authorizes to apply for an interim period only, and the plan must provide for ongoing compliance with the policy specified in R.C. 4928.02.
{¶ 45} The General Assembly’s insertion of “interim” in R.C. 4928.17(C) was purposeful and must be given effect. See Wilson, 77 Ohio St.3d at 336, 673 N.E.2d 1347. “Interim” is defined as “a provisional decision or arrangement.” Webster’s Third New International Dictionary 1179 (1993). By using “interim,” the General Assembly expressed its intent that an order issued pursuant to R.C. 4928.17(C) must be of a temporary, limited nature, to exist only during the period when the incumbent electric utility is working through the process of unbundling noncompetitive and competitive retail electric services in order to achieve full compliance with R.C. 4928.17(A).
{¶ 46} Accordingly, R.C. 4928.17(C) does not permit a utility supplying a noncompetitive retail electric service to modify an approved plan in order to provide new nonelectric products and services with no intention of supplying the products and services through a fully separated affiliate of the utility. To find otherwise fails to give effect to the General Assembly’s choice of the word *523 “interim” in R.C. 4928.17(C) and allows the temporary reprieve permitting noncomplianee to become so large that it swallows the rule set forth in R.C. 4928.17(A).
{¶47} Further, the requirement in R.C. 4928.17(C) that an “alternative plan * * * provide for ongoing compliance with the policy” stated in R.C. 4928.02 supports the interpretation that R.C. 4928.17(C) merely allows for temporary noncomplianee with R.C. 4928.17(A) to assist the utility during the phase-in period of deregulation. R.C. 4928.02 provides:
It is the policy of this state to do the following throughout this state:
[[Image here]]
(B) Ensure the availability of unbundled and comparable retail electric service that provides consumers with the supplier, price, terms, conditions, and quality options they elect to meet their respective needs;
[[Image here]]
(H) Ensure effective competition in the provision of retail electric service by avoiding anticompetitive subsidies flowing from a noncompetitive retail electric service to a competitive retail electric service or to a product or service other than retail electric service, and vice versa, including by prohibiting the recovery of any generation-related costs through distribution or transmission rates.
{¶ 48} Therefore, any order issued pursuant to R.C. 4928.17(C) must be in harmony with these policies, working toward the ultimate goal of deregulation. To conclude that R.C. 4928.17(C) authorizes the commission to approve an order that permits Duke, a noncompetitive utility, to begin providing new nonelectric products and services is antithetical to the policies of deregulation espoused in R.C. 4928.02.
{¶ 49} The intent of the General Assembly in enacting S.B. 3 was to deregulate the electric-utility market. However, the General Assembly knew that it would take a period of time to accomplish this goal. To that end, the General Assembly provided a vehicle by which the commission could temporarily approve a plan that did not require a noncompetitive electric utility to provide a competitive retail electric service through a fully separated affiliate of the utility while the phase-in period of deregulation was progressing. The language of R.C. 4928.02 and 4928.17 expresses this intent.
{¶ 50} R.C. 4928.17(C) makes clear that the intention of the General Assembly was to aid an incumbent electric utility through the deregulation phase-in period by providing a process for unbundling competitive and noncompetitive retail *524 electric services over a limited amount of time. It was not the intention of the General Assembly to permit a business that supplies noncompetitive retail electric services the opportunity to rebundle in order to provide new nonelectric products and services that are required to be offered through a fully separate affiliate. Therefore, I would reverse the orders of the commission and remand this case to the commission with instructions to proceed in a manner consistent with this opinion.
Joseph Oliker and Matthew White, for appellant.
Michael DeWine, Attorney General, William L. Wright, Section Chief, and Thomas W. McNamee and Steven L. Beeler, Assistant Attorneys General, for appellee, Public Utilities Commission of Ohio.
Amy B. Spiller and Jeanne W. Kingery, for intervening appellee, Duke Energy Ohio, Inc.
{¶ 51} Accordingly, I dissent in part.
Pfeifer, J., concurs in the foregoing opinion.