[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Stark Cty. Bd. of Elections v. Stark Cty. Bd. of Commrs.*, Slip Opinion No. 2021-Ohio-1783.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1783

THE STATE EX REL. STARK COUNTY BOARD OF ELECTIONS *v.* STARK COUNTY BOARD OF COMMISSIONERS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Stark Cty. Bd. of Elections v. Stark Cty. Bd. of Commrs.*, Slip Opinion No. 2021-Ohio-1783.]**

*Elections—Mandamus—Voting machines adopted for use by county board of elections under R.C. 3506.02(A)—Writ of mandamus sought to compel board of county commissioners to acquire new voting machines under R.C. 3506.03—Writ granted.*

(No. 2021-0410—Submitted May 19, 2021—Decided May 24, 2021.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this mandamus action, relator, the Stark County Board of Elections, seeks to compel respondents, the Stark County Board of Commissioners and its

members (collectively, "the commissioners"),[1] to acquire new voting machines.  The elections board alleges that it adopted the new machines for use under R.C. 3506.02(A) and that the commissioners therefore have a clear legal duty to acquire the machines under R.C. 3506.03.  We grant the writ.

### Relevant statutory provisions

{¶ 2} Boards of elections are required to "[p]rovide for the purchase * * * of * * * equipment used in * * * elections."  R.C. 3501.11(C).  And they must "cause the polling places to be suitably provided with voting machines, marking devices, automatic tabulating equipment, stalls, and other required supplies."  R.C. 3501.11(I).  Under R.C. 3506.02, there are three ways that voting machines, marking devices, and automatic tabulating equipment may be "adopted for use" in a county:

(A) By the board of elections;

(B) By the board of county commissioners of such county on the recommendation of the board of elections;

(C) By the affirmative vote of a majority of the electors of such county voting upon the question of the adoption of such equipment in such county.

Once voting machines have been adopted for use in one of these ways, a county's board of commissioners "shall acquire the equipment."  R.C. 3506.03.

### Facts and procedural history

{¶ 3} The parties agree that it is time for Stark County to purchase new voting machines.  In fact, the elections board has included the projected cost of new machines in its budget proposals to the commissioners for several years, and the commissioners have reserved funds for the purchase.  In 2018, the General Assembly

---

1. The commissioners are Bill Smith, Janet Weir Creighton, and Richard Regula.

passed Am.Sub.S.B. No. 135 ("S.B. 135"), which provides funding to Ohio counties to subsidize the purchase of new voting machines. To be eligible for the funding, a board of elections must select from a list of vendors certified by the Ohio secretary of state under R.C. 3506.05. S.B. 135, Section 5(B).

{¶ 4} On December 9, 2020, the elections board voted unanimously to acquire voting machines from Dominion Voting Systems. Stark County had previously purchased voting machines from Dominion, and the elections board has been using voting machines supported by Dominion since 2010. Dominion is approved as a voting-system vendor by the secretary of state. The December 9 meeting minutes indicate that the elections board approved a motion to "acquire the Dominion Voting Systems equipment" and to "notify the Commissioners of the selection and request funding from them for the purchase."

{¶ 5} Soon after the December 9 meeting, it became apparent that the elections board and the commissioners disagreed about the significance of the board's vote. While the board took the position that it had unilaterally adopted the Dominion machines for use under R.C. 3506.02(A), the commissioners viewed the board's action merely as a recommendation subject to their approval under R.C. 3506.02(B). Citing "intense public interest" in the board's decision, the commissioners demanded that the board provide them with information about the board's decision-making process. The commissioners were not satisfied with the board's response, and on March 10, 2021, they voted unanimously not to adopt the board's recommendation.

{¶ 6} On March 26, the elections board unanimously passed another motion, this time expressly stating that it was "adopt[ing]" Dominion's voting system "pursuant to R.C. 3506.02(A)" and "demand[ing] that [the commissioners] take all steps necessary to immediately acquire and fund the same pursuant to its duty under R.C. 3506.03." At a meeting of the commissioners on March 31, the president of the board of commissioners stated that "[t]he Commissioners already voted on the Board

of Elections' recommendation on March the 10th" and that they would "not be taking any new action" concerning the purchase of new voting machines.

{¶ 7} On April 2, the elections board filed this original action seeking a writ of mandamus to compel the commissioners to acquire the new voting machines from Dominion.

## Analysis

{¶ 8} To be entitled to a writ of mandamus, the elections board must establish by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the commissioners to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.

*Clear legal right and clear legal duty*

{¶ 9} For several months after the elections board's December 9 decision, the parties disputed whether that vote was an adoption of Dominion's voting machines under R.C. 3506.02(A) or merely a recommendation to the commissioners under R.C. 3506.02(B). The elections board asserts that its meeting minutes show that it adopted the voting machines on December 9 because the minutes state that the board voted to "acquire the Dominion Voting Systems equipment" and to "notify the Commissioners of the selection." But the commissioners argue that the board did not "adopt" the machines on December 9. They emphasize correspondence dated January 13, 2021, in which the elections board's own director referred to the December 9 vote as a decision "to recommend to the [commissioners] to acquire the [Dominion] system."

{¶ 10} We need not resolve this dispute, because the elections board passed a second motion on March 26 unambiguously adopting the Dominion voting machines under R.C. 3506.02(A). The only question we must answer is whether the March 26 decision requires the commissioners to acquire the machines.

{¶ 11} R.C. 3506.03 provides:

4

> Upon the adoption of voting machines, marking devices, and automatic tabulating equipment either by the action of the board of elections or by the board of county commissioners, on the recommendation of the board of elections or by the affirmative vote of a majority of the electors voting on the question of the adoption of such equipment, such board of county commissioners *shall acquire the equipment* by any one or by any combination of [three possible] methods * * *.

(Emphasis added.) Use of the word "shall" confirms that the commissioners have a clear legal duty to acquire the equipment and that the elections board has a clear legal right to the acquisition.

{¶ 12} We reject the commissioners' argument that R.C. 3501.17(A) compels a different conclusion. R.C. 3501.17(A) provides:

> The expenses of the board of elections shall be paid from the county treasury, in pursuance of appropriations by the board of county commissioners, in the same manner as other county expenses are paid. * * *
>
> The board of elections shall not incur any obligation involving the expenditure of money unless there are moneys sufficient in the funds appropriated therefor to meet the obligation.

{¶ 13} The commissioners argue that under this provision, a board of elections may unilaterally adopt voting equipment under R.C. 3506.02(A) only if the county commissioners previously appropriated sufficient funds to the board for the purchase. The commissioners' argument lacks merit, because R.C. 3501.17(A)

applies only to "expenses of the board of elections" and to an elections board's lack of authority to "incur any obligation involving the expenditure of money" absent sufficient appropriated funds. R.C. 3506.03 directs the commissioners—not the elections board—to acquire the voting machines. Because the expense belongs to the commissioners, R.C. 3501.17(A) does not apply.

{¶ 14} S.B. 135 supports this conclusion. Section 5(B) of S.B. 135 provides that "[t]he board of elections shall select voting machines and related services" from the list certified by the secretary of state, the secretary "and each board of county commissioners shall enter into an agreement concerning this selection and acquisition," and "the board of county commissioners shall enter into all necessary contracts or agreements with the selected vendor." If the state-provided funds are insufficient to pay the total cost of the machines, "the board of county commissioners shall be responsible to pay directly to the vendor those costs that exceed its allocated funding amount." *Id.* And under S.B. 135, ownership of the machines ultimately vests in the county commissioners. *Id.* S.B. 135 thus confirms what the General Assembly already said in R.C. 3506.03: the commissioners must acquire the voting machines selected by the elections board.

{¶ 15} As a final matter, the commissioners argue that allowing the elections board to unilaterally adopt voting machines under R.C. 3506.02(A) without the commissioners' approval "would make R.C. 3506.02(B) a meaningless 'courtesy' rather than an effective portion of the statute." The commissioners misread R.C. 3506.02. The statute provides options for the adoption of voting equipment. R.C. 3506.02(B) is not rendered meaningless merely because a board of elections may choose to act under R.C. 3506.02(A) instead. The commissioners take issue with the availability of a selection process that does not allow them to scrutinize the elections board's choice. But that policy decision is the province of the General Assembly, not this court.

6

*Adequate remedy*

{¶ 16} To be an adequate remedy in the ordinary course of the law, a remedy must be "complete, beneficial, and speedy." *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 41. The elections board lacks an adequate remedy at law here because to obtain complete relief, it needs an order compelling the commissioners to act. The board could seek a mandatory injunction in another action, but that itself would be an extraordinary remedy—i.e., not one obtained in the ordinary course of the law. *See State ex rel. Omni Energy Group, L.L.C. v. Ohio Dept. of Natural Resources, Div. of Oil & Gas Resources Mgt.*, __ Ohio St.3d __, 2020-Ohio-5581, __ N.E.3d __, ¶ 20.

{¶ 17} Further, we reject the commissioners' argument that the elections board has an adequate remedy under R.C. 3501.17(A), which provides:

> If the board of county commissioners fails to appropriate an amount sufficient to provide for the necessary and proper expenses of the board of elections pertaining to the conduct of elections, the board of elections may apply to the court of common pleas within the county, which shall fix the amount necessary to be appropriated and the amount shall be appropriated.

As just discussed, R.C. 3501.17(A) does not apply here because the purchase of the machines is not an "expense[] of the board of elections" under that statute.

## Conclusion

{¶ 18} For the reasons stated above, we hold that the elections board is entitled to the requested writ of mandamus.

Writ granted.

O'CONNOR, C.J., and FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

BRUNNER, J., concurs, with an opinion.

KENNEDY, J., dissents, with an opinion.

_____

**BRUNNER, J., concurring.**

{¶ 19} In this case, respondents, the Stark County Board of Commissioners and its members (collectively, "the commissioners"), based on stated "intense public interest," are attempting to deny the electorate of Stark County access to a tested, credentialed, and functional voting system. The voting machines at issue have been vetted by the secretary of state and the Ohio Board of Voting Machine Examiners[2] and selected by relator, the Stark County Board of Elections, to effect the fair expression of the voters' political will. The commissioners' arguments supporting their inaction are at best specious and at worst a dereliction of duty. *See* R.C. 2921.44(E). This court has stated:

> "The right to vote includes the right to have one's vote counted on equal terms with others." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir.2008); *Bush v. Gore*, 531 U.S. 98, 104, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) ("the right to vote as the legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter").

_____

2. The Ohio Board of Voting Machine Examiners examines and approves voting equipment for use in Ohio elections. The secretary of state has the authority to break a tie vote of the board, and the Office of the Secretary of State provides legal, technical, and clerical support to the board. R.C. 3506.05(B). See the certified list of Ohio's voting equipment here: https://www.ohiosos.gov/globalassets/elections/bvme/systems.pdf (accessed May 21, 2021) [https://perma.cc/9LSH-96H7].

*State ex rel. Skaggs v. Brunner*, 120 Ohio St.3d 506, 2008-Ohio-6333, 900 N.E.2d 982, ¶ 58.

{¶ 20} The General Assembly has established a framework for providing voting equipment through vetting by the secretary of state and the Ohio Board of Voting Machine Examiners, R.C. 3506.05(B) through (H), and selection by a county board of elections of what it determines would work best in its county. The General Assembly then requires the county's board of commissioners to acquire the board of elections' selection by purchase or lease. R.C. 3506.02(A) and 3506.03. It was reckless for the commissioners to refuse to purchase the selected voting machines and to characterize the board of elections' second vote, one necessitated by the commissioners' rejection of the board's first vote, as a matter the commissioners did not need to deal with. Then, for the commissioners to argue that the board of elections instead was required to avail itself of the common pleas court to obtain the new voting equipment was a failure to perform a duty expressly imposed by the law on the commissioners.

{¶ 21} In a sense, the commissioners' refusal also jeopardized the lawful activity of the board of elections. No public official or public servant, such as a member of a board of elections, should be either explicitly or tacitly caused to violate the law by being pushed by a funding source, here, the commissioners, toward doing what the law expressly prohibits—incurring an obligation for more than the board's appropriated funds.

{¶ 22} R.C. 3501.17(A) requires:

> The expenses of the board of elections shall be paid from the county treasury, in pursuance of appropriations by the board of county commissioners * * *. If the board of county commissioners fails to appropriate an amount sufficient to provide for the necessary and proper expenses of the board of elections pertaining to the

conduct of elections, the board of elections may apply to the court of common pleas within the county, which shall fix the amount necessary to be appropriated and the amount shall be appropriated. Payments shall be made upon vouchers of the board of elections certified to by its chairperson or acting chairperson and the director or deputy director, upon warrants of the county auditor.

*The board of elections shall not incur any obligation involving the expenditure of money unless there are moneys sufficient in the funds appropriated therefor to meet the obligation.*

(Emphasis added.)

{¶ 23} It would be difficult for a board to obtain an appropriation authorization from a court without a contract for voting machines to support a voucher for payment. A board of elections cannot incur an obligation for which there is no appropriation, R.C. 3501.17(A), such as a contract to purchase voting machines. Nor does it have the authority to make a direct purchase under R.C. 3506.02 or 3506.03. Without a contract, both the obligation and the amount would be speculative, leaving a court in a tenuous position to issue a specific appropriation order.

{¶ 24} In essence, when the commissioners suggested to the board that the common pleas court order the appropriation, they were in effect encouraging the board to enter into an obligation with the voting machine vendor in violation of R.C. 3501.17(A), encouraging the board to engage in its own dereliction of duty, *i.e.* "recklessly do[ing] any act expressly forbidden by law with respect to the public servant's office," R.C. 2921.44(E). Meanwhile this proverbial dog chasing its tail leads to nowhere, except potential disenfranchisement of the county's voters in the event of aging voting machine failure at the next election held without new machines.

{¶ 25} As we have stated in our per curiam opinion, the purchase of voting machines is not an "expense[] of the board of elections" under R.C. 3501.17(A). A writ of mandamus is both appropriate and necessary, because the ultimate responsibility for obtaining voting machines, the essential machinery of self-governance in every county of this state, lies with the commissioners.

{¶ 26} In concurring in the court's per curiam opinion, I emphasize that there are glaring differences between R.C. 3501.17(A), relating to funds appropriated to a board of elections, and R.C. 3506.03, relating to the duty of a board of county commissioners to provide necessary funding for voting equipment selected by a board of elections pursuant to R.C. 3506.02(A). That the commissioners would place what amounts to political considerations above the county's electors' fair access to voting is indefensible. Granting this writ is essential, and I concur in the per curiam opinion.

_____

KENNEDY, J., dissenting.

{¶ 27} I dissent from the majority's holding granting a writ of mandamus to relator, Stark County Board of Elections ("BOE"), ordering respondents, Stark County Board of Commissioners and its members (collectively, "the commissioners"), to purchase the specific voting equipment that the BOE has requested. The plain language of R.C. 3506.02 does not give the BOE the authority to select a specific type of voting equipment to be used in Stark County and the plain language of R.C. 3506.03 does not impose a duty on the commissioners to purchase the specific voting equipment that the BOE has requested. Because the BOE fails to assert any other basis entitling it to relief, I would deny the writ.

**Legal background**

{¶ 28} "To be entitled to a writ of mandamus, a relator must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide the requested relief, and (3)

the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Repeal Lorain Cty. Permissive Sales Tax Commt. v. Lorain Cty. Bd. of Elections*, 151 Ohio St.3d 247, 2017-Ohio-7648, 87 N.E.3d 1234, ¶ 9. If any of these elements is not proved, the petition must be denied. *See State ex rel. Leis v. Kraft*, 10 Ohio St.3d 38, 39, 460 N.E.2d 1376 (1984).

{¶ 29} The BOE claims that R.C. 3506.02 provides it with a clear legal right to choose a type of voting equipment to be used in elections in Stark County and that R.C. 3506.03 imposes a clear legal duty on the commissioners to purchase the voting equipment that the BOE has chosen. I disagree.

{¶ 30} This case returns us to a familiar place: statutory construction. "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). And an unambiguous statute is to be applied, not interpreted. *McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, 144 N.E.3d 369, ¶ 2.

### R.C. 3506.02 is a general statute regarding whether a county will implement the use of voting equipment

{¶ 31} R.C. 3506.02 provides three methods for a county to adopt the *use* of voting machines, marking devices, and automatic tabulating equipment in elections.

> Voting machines, marking devices, and automatic tabulating equipment *may be adopted for use* in elections in any county in the following manner:
>
> (A) By the board of elections;

(B) By the board of county commissioners of such county on the recommendation of the board of elections;

(C) By the affirmative vote of a majority of the electors of such county voting upon the question of the adoption of such equipment in such county.

(Emphasis added.)

{¶ 32} The statute is unambiguous. The plain language of the statute provides the ways for a county to implement the use of technology for elections in a county. This becomes especially clear when reading R.C. 3506.02(C), through which the General Assembly allows the electors of a county, by way of petition, to place on the ballot the issue whether "[v]oting machines, marking devices, and automatic tabulating equipment may be adopted for use in elections" in the county. R.C. 3506.02(C) provides that if the threshold number of petition signatures is met, the board of elections must submit at the next general election the question, "Shall voting machines, marking devices, and automatic tabulating equipment be adopted in the county of _____?" Therefore, the relevant question presented to the voters is *whether* voting machines, marking devices, and automatic tabulating equipment should be used in the county. The voters do not get to decide the issue of what type of voting equipment should be selected and purchased.

{¶ 33} The General Assembly did not give the BOE or the commissioners any more authority than it gave the voters in R.C. 3506.02. There are three equal ways to adopt the use of voting machines, marking devices, and automatic tabulating equipment for county use in elections. R.C. 3506.02(A) and (B) allow the BOE or the commissioners, on the recommendation of the BOE, to implement the use of technology as set forth in the statute without a vote of electors. What the statute allows voters to do is the same thing that a board of elections or county commissioners may do: choose to transition to the use of technology. The type of

election equipment that may be used is not decided pursuant to R.C. 3506.02 at all. If the BOE believes that R.C. 3506.02 gives it the authority to choose the type of election equipment, then voters would have that same right under the statute. But it is clear from the question posed to voters following a successful petition—"Shall voting machines, marking devices, and automatic tabulating equipment be adopted in the county of _____?"—that the statute addresses the question of the *general* transition to the use of voting technology. It speaks of voting machines, marking devices, and automatic tabulating equipment only in generic terms.

{¶ 34} R.C. 3506.02 was first enacted in 1959 and it has changed very little since then. *See* Am.S.B. No. 72, 128 Ohio Laws 82. Its plain meaning now is the same as it was then. Through R.C. 3506.02, the General Assembly allows counties to transition to more technologically advanced ways for boards of elections to process votes. In 1959, the general technology available to adopt for use was described as "[m]arking devices and automatic tabulating equipment." 128 Ohio Laws at 83-84. Since an amendment in 1994, the general technology available to be adopted for use has been described as "[v]oting machines, marking devices, and automatic tabulating equipment." Sub.H.B. No. 143, 145 Ohio Laws, Part II, 3266, 3269. The General Assembly has never altered the statute to give a board of elections, a board of county commissioners, or electors the ability to specify the type of equipment to purchase. The majority's conclusion that R.C. 3506.02 does give the BOE such broad power in this case is contrary to the statutory scheme.

{¶ 35} "[B]oards of elections are created by statute and must comply with applicable statutory requirements." *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 15. The plain language of R.C. 3506.02 demonstrates that the authority of the BOE is limited. The BOE has the authority to determine *whether* voting machines, marking devices, and automatic tabulating equipment should be *adopted for use* in the county for elections. There is nothing

14

in the plain language of the statute that gives the BOE the authority to choose the type of voting equipment.

**Contrasting R.C. 3506.02 and R.C. 3506.021**

{¶ 36} Reading this statute as the BOE argues—and as the majority holds—requires the addition of words. But when applying a statute, "a court cannot simply ignore or add words." *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52. Indeed, R.C. 3506.02 would have to read more like R.C. 3506.021 for the statute to provide the authority to the BOE that it claims it has to choose voting equipment. R.C. 3506.021(A) states: "*A board of elections may adopt the use of any electronic pollbook* that has been certified for use in this state in accordance with section 3506.05 of the Revised Code, instead of using poll lists or signature pollbooks." (Emphasis added.) R.C. 3506.05 states that no voting equipment, including electronic pollbooks, can be used unless it has been certified by the secretary of state. R.C. 3506.05(B) requires the secretary of state to appoint a board of voting machine examiners to examine and approve equipment.

{¶ 37} The plain language of R.C. 3506.021(A) gives a board of elections the authority to adopt the use of a specific electronic pollbook as long as that pollbook has been certified by the secretary of state. Had the General Assembly intended to give boards of elections the same authority in R.C. 3506.02 regarding voting machines, marking devices, and automatic tabulating equipment, it could have done so in 2014 when R.C. 3506.021 was enacted, but R.C. 3506.02 was last amended in 2010. The General Assembly's use of particular language authorizing boards of elections to choose a particular electronic polling book demonstrates that it knows how to create such exclusive authority in boards of elections, and the fact that it has chosen not to grant such broad authority in another statute in the same chapter is significant. *See State ex rel. Ohio Presbyterian Retirement Servs., Inc. v. Indus. Comm. of Ohio*, 151 Ohio St.3d 92, 2017-Ohio-7577, 86 N.E.3d 294, ¶ 25;

*Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 26.

### R.C. 3506.02 provides no clear legal right to the BOE

{¶ 38} Although some other provision of the Revised Code might give the BOE the authority to choose specific voting equipment, R.C. 3506.02 does not. Since the BOE relies on R.C. 3506.02 as providing its clear legal right to unilaterally choose specific voting equipment, its complaint in mandamus fails because it has not demonstrated a clear legal right to the relief it seeks. Because in my view the BOE has not met its burden to prove a clear legal right, it cannot prove its entitlement to a writ of mandamus, and the case should end here. But because the majority addresses R.C. 3506.03 in regard to the commissioners' duty, I write further to address that issue.

### R.C. 3506.03 imposes no clear legal duty on the commissioners

{¶ 39} Contrary to the BOE's argument, there is no clear legal duty under R.C. 3506.03 for the commissioners to purchase the voting equipment that the BOE has chosen. Because the BOE does not have the ability to choose specific voting equipment under R.C. 3506.02, there is no duty under R.C. 3506.03 for the board of county commissioners to acquire the voting equipment the BOE has chosen. R.C. 3506.03 restates the three ways a county has to adopt the use of voting equipment as set forth in R.C. 3506.02:

> Upon the adoption of voting machines, marking devices, and automatic tabulating equipment either by the action of the board of elections or by the board of county commissioners, on the recommendation of the board of elections or by the affirmative vote of a majority of the electors voting on the question of the adoption of such equipment, such board of county commissioners shall

16

acquire the equipment by any one or by any combination of the following methods[.]

R.C. 3506.03. The statute then provides for three funding mechanisms.

{¶ 40} Like R.C. 3506.02, R.C. 3506.03 does not set forth what entity decides which voting equipment the board of county commissioners must acquire. Substantively, R.C. 3506.03 establishes three ways that a board of commissioners may fund the acquisition of voting machines, marking devices, and automatic tabulating equipment, once their use has been adopted by one of the three methods set forth in R.C. 3506.02. But R.C. 3506.03 does not create a duty for the commissioners to acquire the specific voting equipment the BOE has chosen.

### Conclusion

{¶ 41} Because R.C. 3506.02 does not give the BOE authority to select specific voting equipment and because R.C. 3506.03 does not impose a duty on the commissioners to purchase equipment that the BOE has requested, the BOE has failed to meet its burden and prove a clear legal right in the BOE or a clear legal duty on behalf of the commissioners in this case. Because the BOE provides no other statutory authority for the granting of the writ, I dissent from the majority's judgment and would deny the writ.

_____

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, Derek S. Clinger, and Ben F.C. Wallace, for relator.

Isaac, Wiles & Burkholder, L.L.C., Mark R. Weaver, Donald C. Brey, and David C. Moser, for respondents.

_____