[Cite as *Norman v. Kellie Auto Sales, Inc.*, 2020-Ohio-6953.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Justin Norman, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 18AP-32 |
| v. | : | (C.P.C. No. 17CV-5681) |
| Kellie Auto Sales, Inc., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 30, 2020

**On brief:** *Coffman Legal, LLC,* and *Matthew J.P. Coffman*; *Bryant Legal, LLC,* and *Daniel I. Bryant,* for appellee.

**On brief:** *Law Offices of Thomas Tootle Co., LPA,* and *Thomas Tootle*, for appellant.

ON APPLICATIONS FOR RECONSIDERATION
AND CONSIDERATION EN BANC

DORRIAN, J.

{¶ 1}  This case involves plaintiff-appellee, Justin Norman's, purchase of a vehicle from defendant-appellant, Kellie Auto Sales, Inc. ("Kellie Auto"); Norman's attempted return of the vehicle upon learning it was a rebuilt salvage; the parties' participation in arbitration in an effort to resolve the dispute; the arbitrator's award in favor of Norman and finding that Kellie Auto had knowingly committed an unfair or deceptive act under the Consumer Sales Practices Act ("CSPA"); Kellie Auto's refusal to pay the award; Norman's filing with the trial court for judgment and to confirm the arbitration award pursuant to R.C. 2711.09; Kellie Auto's construing Norman's filing as an "action" under the CSPA and R.C. 1345.092; and subsequent filing with the trial court of a notice of cure offer and application to modify the arbitration award pursuant to R.C. 2711.11.

{¶ 2}    The Franklin County Court of Common Pleas denied Kellie Auto's request to modify the arbitration award and granted Norman's application to confirm the award; and denied Kellie Auto's motion for relief from judgment; Kellie Auto appealed.[1]

{¶ 3}    On February 5, 2019, a three-judge panel of this court filed *Norman v. Kellie Auto Sales, Inc.*, 10th Dist. No. 18AP-32, 2019-Ohio-360 ("original decision"), reversing in part and affirming in part the trial court's decisions.   The panel sustained the first assignment of error and reversed finding the trial court erred "when it refused to recognize [Kellie Auto's] timely exercise of a 'right to cure' pursuant to R.C. 1345.092." *Id.* at ¶ 18. Norman filed an application for reconsideration.

{¶ 4}    Subsequent to the filing of the original decision, one judge of the panel retired and another judge resigned.  The judge who was elected to the seat previously held by the retired judge had been the trial judge on the case and therefore a conflict existed; in her place, a judge of the court was randomly selected for the panel on reconsideration, joining the judge who was appointed to fulfill the term of the resigned judge and the original judge of the panel.

{¶ 5}    By a 2-1 majority, with the original author now in dissent, the panel granted reconsideration, vacated the original decision, overruled the first assignment of error, and affirmed the trial court's decisions. *Norman v. Kellie Auto Sales, Inc.*, 10th Dist. No. 18AP-32, 2020-Ohio-4311 ("first reconsideration decision").  The original panel member would have denied reconsideration.  In addition, the reconsideration panel majority overruled the remaining assignments of error, including the second assignment of error, regarding the trial court's affirming of the arbitrator's award of attorney fees, which the original panel had declined to address determining it to be moot.   Finally, the panel declined to grant Norman's request to remand the decision to the trial court to consider his motion for post-arbitration attorney fees.

{¶ 6}    On September 9, 2020, Norman filed an application for partial reconsideration of the first reconsideration decision.  Norman asks this court to reconsider our ruling to decline to remand to the trial court Norman's motion for post-arbitration attorney fees.  On September 14, 2020, Kellie Auto filed an application for reconsideration and an application for consideration en banc of the first reconsideration decision.  Kellie

---

[1] Kellie Auto appealed the trial court decisions filed November 30, December 11, 2017, and January 9, 2018.

Auto asks the court to reconsider its application of the criteria regarding reconsideration and "void[ing]" of the asserted CSPA right to cure. Kellie Auto further requests the full court consider the case en banc and argues the first reconsideration decision conflicts with: (1) *State v. Harris*, 10th Dist. No. 13AP-1014, 2014-Ohio-672, (2) *Hal v. State Dept. of Edn.*, 10th Dist. No. 18AP-301, 2020-Ohio-204, and (3) the *Norman* original decision, 2019-Ohio-360.

**Criteria for Reconsideration**

{¶ 7} App.R. 26(A) provides a mechanism by which parties may prevent miscarriages of justice that could arise when an appellate court makes an obvious error or renders an unsupportable decision under the law. *Harris* at ¶ 8. When presented with an application for reconsideration pursuant to App.R. 26(A)(1), an appellate court must determine whether the application calls to the court's attention an obvious error in its decision or raises an issue for consideration that was either not considered at all or was not fully considered by the court when it should have been. *Electronic Classroom of Tomorrow v. State Bd. of Edn.*, 10th Dist. No. 17AP-767, 2019-Ohio-1540, ¶ 3, *State v. Wade*, 10th Dist. No. 06AP-644, 2008-Ohio-1797, ¶ 2, *discretionary appeal not allowed*, 119 Ohio St.3d 1415, 2008-Ohio-3880, *cert. denied, Ohio v. Wade*, 555 U.S. 1126 (2009), *Matthews v. Matthews*, 5 Ohio App.3d 140 (10th Dist.1981). However, an application for reconsideration is not intended for instances where a party simply disagrees with the logic or conclusions of the court. *State v. Burke*, 10th Dist. No. 04AP-1234, 2006-Ohio-1026, ¶ 2. Furthermore, an application for reconsideration is not a means to raise new arguments or issues. *Electronic Classroom* at ¶ 3, citing *State v. Wellington*, 7th Dist. No. 14 MA 115, 2015-Ohio-2095, ¶ 9.

**Norman's Application for Partial Reconsideration**

{¶ 8} In his application for partial further reconsideration, Norman asks the court to reconsider and vacate: (1) our statement that the trial court did not expressly rule on Norman's motion for post-arbitration attorney fees, (2) our construction of the trial court not having ruled on the motion as a denial of the same, and (3) our observation that the trial court did affirm the arbitrator's award of an extra $1,000 for post-arbitration work. (First Reconsideration Decision at ¶ 41.) Norman points us to the trial court's January 22, 2018 entry, filed after Kellie Auto filed the notice of appeal. In the entry, the trial court stated:

> Defendant appealed the Court's 12/11/17 Decision and Entry on 1/10/18. Plaintiff filed his motion for attorney's fees on 12/18/17. "When an appeal is taken from the [trial] court the latter court is divested of jurisdiction, except to take action in aid of the appeal, until the case is remanded to it by the appellate court." State ex rel. Special Prosecutors v. Judges, Court of Common Pleas, 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1978); *see also* Investors Reit One v. Investors Resort Motel Corp., 10th Dist. Franklin No. 80AP-476, 1980 Ohio App. LEXIS 13445, at * 5 (holding trial court loses jurisdiction as to the phases of the case appealed). As such, the Court releases the highlighted motion from its docket under the noted authorities. Plaintiff may re-file his motion if appropriate after the appeals process has concluded.
>
> **IT IS SO ORDERED**.

(Emphasis sic.)  (Jan. 22, 2018 Entry.)

{¶ 9}  We acknowledge the trial court's January 22, 2018 entry and make no determination as to the merits of any subsequent motion Norman may file in the trial court (as, for example, with regard to appellate counsel fees).  However, we deny Norman's application for partial reconsideration as the trial court declined to rule on Norman's motion before releasing the same, and as further recited in the first reconsideration decision.

**Kellie Auto's Application for Reconsideration**

{¶ 10} To begin, Kellie Auto argues this court should reconsider the first reconsideration decision because it "failed to follow settled precedent when it used reconsideration as a vehicle to re-hash the merits of [the original decision]" and because "App.R. 26(A)(1) does not expressly authorize the [panel] to vacate the [original] decision * * * via an application for reconsideration." (Kellie Auto's App. for Recon. at 2-3.)  In short, Kellie Auto contends our first reconsideration decision was improper because: (1) the original decision was not "unsupportable under the law," and (2) reconsideration was granted only because of the change of the appellate panel's composition.

{¶ 11} First, we reject Kellie Auto's suggestion that "obvious error" can only be defined as "unsupportable under the law."  There is no settled precedent from this court that defines "obvious error" as Kellie Auto suggests.  The two cases cited by *Kellie Auto*— *Harris* and *Hal*—did not define "obvious error."  Both *Hal* and *Harris* stated only that "App.R. 26 provides a mechanism by which a party may prevent miscarriages of justice that

could arise when an appellate court makes an obvious error ***or*** renders an unsupportable decision under the law." (Quotations omitted.) (Emphasis added.) *Hal*[2] at ¶ 1, quoting *Harris* at ¶ 8, quoting *Corporex Develop. & Constr. Mgt., Inc. v. Shook, Inc.*, 10th Dist. No. 03AP-269, 2004-Ohio-2715, ¶ 2, quoting *State v. Owens*, 112 Ohio App.3d 334, 336 (11th Dist.1996). This language does not define or limit to legally insupportable points of law what is an obvious error for purposes of reconsideration pursuant to App.R. 26. Nor would such a definition or limitation make sense. A panel could conceivably make any number of obvious errors justifying reconsideration including a factual error, a procedural error, or an error of law. Therefore, "obvious error" is not limited to "unsupportable under the law" but can encompass other types of error as well.

{¶ 12} Next, we reject Kellie Auto's arguments that: (1) App.R. 26(A)(1) provides no authority for this court to vacate its own decisions, and (2) "[t]here is no justification for why a decision from a second appellate panel, made up of two entirely new judges -- who now form a majority -- should supersede the unanimous decision from the first panel." (Kellie Auto's App. for Recon. at 9.)

---

[2] In its application for reconsideration, Kellie Auto referred us specifically to paragraph 8 in *Harris* which, as noted above, uses the disjunctive "or" and stated "obvious error *or* renders an unsupportable decision under the law." (Emphasis added.) In its application, Kellie Auto only generally cited to *Hal* and did not refer us to any specific paragraphs therein. "The burden of affirmatively demonstrating error on appeal rests with the [movant on reconsideration]." *Miller v. Johnson & Angelo*, 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2. And, "[i]t is the duty of the [movant on reconsideration], not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error." *Bond v. Canal Winchester*, 10th Dist. No. 07AP-556, 2008-Ohio-945, ¶ 16. Accordingly, we would consider that Kellie Auto waived any argument other than based on the language to which it specifically referred in *Harris*, using the disjunctive and stating "obvious error *or* renders an unsupportable decision under the law." This same use of the disjunctive was repeated three times in *Hal*: at ¶ 1, citing *Harris*, reconsideration is warranted " ' "when an appellate court makes an obvious error *or* renders an unsupportable decision under the law." ' " (Emphasis added.); in ¶ 2, reiterating the criteria and using the disjunctive "nor demonstrates the court made an obvious error *or* rendered a decision unsupportable under the law." (Emphasis added.); in ¶ 3, concluding and using the disjunctive "[w]e cannot see that our review of what the hearing officer found contains either obvious error *or* was unsupportable under the law." (Emphasis added.) We will note, however, that in the summation of *Hal*, the opinion discarded the disjunctive "or," and stated that the motion to reconsider raised "neither an obvious error, *i.e.*, that our decision was unsupportable under the law, nor an issue this court should have but did not fully consider." (Italics sic.) *Hal* at ¶ 8. Nevertheless, *Hal* used the disjunctive three times within the body of the text prior to using the i.e. as amplification, and our research has not revealed any other court using the amplification i.e. in this context. Furthermore, most significantly, the Supreme Court of Ohio has also applied and held as precedent the criteria using the disjunctive: "App.R. 26 provides a mechanism by which a party may prevent miscarriages of justice that could arise when an appellate court makes an obvious error or renders an unsupportable decision under the law." (Internal quotation omitted.) *State v. Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, ¶ 103, quoting *Corporex* at ¶ 2, quoting *Owens* at 336 (O'Donnell, C.J., concurring.) For these reasons, we do not consider any conflict between *Hal* and the first reconsideration decision as to the criteria for reconsideration. Therefore, we do not consider the use of "i.e." in the summation of *Hal* to be settled precedent.

{¶ 13} Regarding authority to vacate a prior decision on reconsideration, we note that such a limitation does not make sense when the purpose of reconsideration is to correct an obvious error or address an issue that was either not considered at all or was not fully considered when it should have been.  It is true, however, that numerous cases of this court offer different approaches when granting reconsideration.  Some have expressly vacated the earlier decision, some have not.  Panels that granted reconsideration and reached the opposite outcome have generally vacated the initial decision.  *See, e.g.*, *State v. Lawson*, 10th Dist. No. 12AP-53, 2013-Ohio-803.  Even in cases in which the panel merely clarified its reasoning on reconsideration and did not disturb the prior judgment of affirmance or reversal, the panel has sometimes chosen to vacate its earlier decision and entry.  *See, e.g.*, *Davis v. Hollins*, 10th Dist. No. 17AP-716, 2019-Ohio-1789.  Other panels have neglected to expressly vacate their prior decision when granting reconsideration, even when reconsideration altered not only the reasoning but also the extent of reversal and the resulting instructions to the trial court.  *Wade* (criminal), *Grothaus v. Warner*, 10th Dist. No. 08AP-115, 2008-Ohio-6683 (civil).  More predictably, a panel has not expressly vacated its prior decision when granting reconsideration only to address a minor technical point overlooked in the first instance.  *Appenzeller v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-747, 2018-Ohio-1698.  Nevertheless, Kellie Auto has identified no decision from this court—or from any court for that matter—that holds a panel may not vacate a prior decision on reconsideration if the criteria for reconsideration have been met, and we are not persuaded by Kellie Auto's argument regarding the same.

{¶ 14} Regarding the majority of the reconsideration panel vacating the original decision, we are mindful that the Supreme Court of Ohio recently accepted discretionary appeal on the same issue: whether "under App.R. 26(A)(1)(c), an application for reconsideration must be considered by the same three judges that considered the original decision."  *Jezerinac v. Dioun*, S.Ct. case No. 2020-0743, September 1, 2020 Entry, citing Proposition of Law No. I.  We are also mindful of Judge Brunner's thoughtful dissents in *Jezerinac v. Dioun*, 10th Dist. No. 18AP-479, 2020-Ohio-587, and *Jezerinac* (Apr. 30, 2020) (memorandum decision). Nevertheless, until such time as the Supreme Court decides the appeal, we follow long standing precedent and practice as outlined in *Jezerinac*, 2020-Ohio-587, at ¶ 8:

When a judge is replaced on a panel, the successor judge has the same responsibilities as his or her predecessor. *Holland v. State*, 27 Ohio St.2d 77, 78 (1971) ("[t]he judicial power of a member of the Court of Appeals is not personal to him [or her] and may be exercised by another member of the Court of Appeals"); *see also State ex rel. Yost v. Omar Ibn El Khattab Mosque, Inc.*, 156 Ohio St.3d 523, 2019-Ohio-1958 (two newly elected justices participating in decision on motion for reconsideration in place of former justices); *State v. [Braden*, 158 Ohio St.3d 462], 2019-Ohio-4204 (same); *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777 (same).

{¶ 15} Finally, as to the merits, Kellie Auto argues this court should reconsider the first reconsideration decision because it "voided the 'right to cure' established by the CSPA when it found a supplier obligated to exercise the right prior to arbitration, contrary to the express language of R.C. § 1345.092." (Kellie Auto's App. for Recon. at 2.) Kellie Auto argues the first reconsideration decision ignores the CSPA entirely and treated the case as merely an application of the Arbitration Act. Further, Kellie Auto notes, as we agree and emphasized, the court was compelled to give effect to both acts. Kellie Auto then contends:

It is a plaintiff (and not a defendant) who dictates a decision to pursue arbitration vs. court action. The Plaintiff here was within his right to file a lawsuit. Likewise, the Defendant could ask that the lawsuit be stayed pending the disposition of arbitration under R.C. § 2711.02. Had the Plaintiff elected to pursue this strategy, the "right to cure" would have been asserted before (and not after) arbitration. This was a strategic decision within the control of the Plaintiff.

(Kellie Auto's App. for Recon. at 8.)

{¶ 16} Kellie Auto's argument is not persuasive, including the suggestion that arbitration was a strategic decision within the sole control of plaintiff. The arbitration agreement stated: "either you or we may choose to have any dispute between us decided by arbitration." (Emphasis omitted.) *Norman*, 2019-Ohio-360, at ¶ 3. Twice during the course of negotiations, Kellie Auto informed Norman of its intention to invoke the provisions of the arbitration agreement. *Norman,* 2019-Ohio-360, at ¶ 5 ("In the event that this offer is not agreeable by Mr. Norman, then Kellie Auto Sales respectfully invokes the provisions of the Arbitration Agreement executed by Mr. Norman and Kellie Auto Sales, Inc. on January 25, 2016."); *Id.* at ¶ 6 ("By email sent August 9, 2016, Kellie Auto's legal counsel advised Norman's legal counsel that Kellie Auto was invoking the arbitration

agreement the parties had executed on January 25, 2016."). Furthermore, Kellie Auto initially agreed to provide payment to Norman pursuant to the arbitrator's award; however, upon retaining new counsel, Kellie Auto refused to provide payment. Kellie Auto's new counsel advised Norman it was unwilling to pay the award "without Norman taking further legal action." *Norman,* 2019-Ohio-360, at ¶ 10. Thus, to say that it was Norman who dictated the decision to pursue arbitration is disingenuous. And, it could be said that it was Kellie Auto who made the strategic decision to invoke and participate in arbitration, wait to see how the arbitrator ruled, and *then* compel the filing of a motion to confirm and make a cure offer.[3]

{¶ 17} Second, we reject Kellie Auto's implication that the first reconsideration decision failed to give effect to both the Arbitration Act and the CSPA. To begin, the original decision, before reconsideration, gave no effect to long settled precedent regarding the lack of authority for an arbitrator to reconsider its award and to a court's strictly limited statutory authority to vacate or modify an arbitrator's award. This was both obvious error and cannot be supported under the law.

{¶ 18} Here, again, we reiterate that:

> Kellie Auto's claim that modification was required for application of the CSPA cure provisions was not based on any flaw in the arbitrator's decision. Rather, the modification was based on something that happened after the arbitrator issued his decision and award and after Norman applied for confirmation.
>
> * * *
>
> [N]o cure offer was made as arbitration proceeded and the arbitrator did not err—requiring vacation or modification—by failing to consider the cure provisions because no cure offer was made for him to assess. The cure offer was made after the arbitrator's powers expired and he was powerless to modify or revoke his award at the time Kellie Auto made the cure offer.

---

[3] The original decision contemplated such an abuse. "And while we hold concern for potential abuses of resolving consumer disputes permitted by division (G) of R.C. 1345.092, we can only interpret and not change the statute. We can envision that a supplier could insist on arbitration, refuse to pay, force a court action, and timely make a cure offer pursuant to R.C. 1345.092(A) that is the same as or just higher than the economic damage amount awarded by an arbitrator whether or not the arbitrator awarded treble damages and attorney fees. Under this circumstance, as here, the application of division (G) of R.C. 1345.092, the consumer's arbitration award would be reduced to at least the original arbitration award of economic damage, thereby eliminating treble damages and any attorney fees awarded in excess of $2,500." *Norman*, 2019-Ohio-360, at ¶ 33.

> Kellie Auto did not meet any of the grounds for vacation or modification in R.C. 2711.10 or 2711.11.

*Norman,* 2020-Ohio-4311, at ¶ 15, 17.[4]

{¶ 19} In addition, neither the CSPA nor the first reconsideration decision prevent parties from attempting to resolve their dispute short of resorting to the filing of claims pursuant to the CSPA. Nothing in the CSPA nor the first reconsideration decision prevents suppliers from making offers to resolve disputes that contain the same or similar components as outlined in R.C. 1345.092(D). Such efforts to resolve disputes need not be triggered only by service of a summons and complaint on the supplier as Kellie Auto suggests. The parties attempted the same prior to Kellie Auto invoking arbitration, and the holding of the first reconsideration decision in no way would have prevented them from continuing to negotiate during the course of arbitration.

**Criteria for Consideration En Banc**

{¶ 20} An en banc proceeding is one in which all full time judges of a court who have not recused themselves or otherwise been disqualified participate in the hearing and resolution of a case. App.R. 26(A)(2)(a); *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008-Ohio-4914, ¶ 10. The purpose of en banc proceedings is to resolve conflicts of law that arise within a district. App.R. 26(A)(2)(a); *McFadden* at ¶ 10, 15-16. These intradistrict conflicts arise when different panels of judges hear the same issue, but reach different results. *Id.* at ¶ 15. This " 'create[s] confusion for lawyers and litigants and do[es] not promote public confidence in the judiciary.' " *Thyroff v. Nationwide Mut. Ins. Co.*, 10th Dist. No. 15AP-1043, 2016-Ohio-5715, ¶ 8, quoting *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, ¶ 18. Resolution of intradistrict conflicts promotes uniformity and predictability in the law, and a larger appellate panel provides the best possible means of resolution. *Open Container, Ltd. v. CB Richard Ellis, Inc.*, 10th Dist. No. 14AP-133, 2015-Ohio-866, ¶ 3, citing *McFadden*, at ¶ 15-16.

{¶ 21} App.R. 26(A)(2)(a) states as follows:

> Upon a determination that two or more decisions of the court on which they sit are in conflict, a majority of the en banc court may order that an appeal or other proceeding be considered

---

[4] And Kellie Auto does not reckon with the provisions of the CSPA indicating that any operative cure offer must be made before any award issues in binding arbitration. *See Norman*, 2020-Ohio-4311, at ¶ 48 (Nelson, J., concurring and citing R.C. 1345.092(D)(2) and (G)(1)).

en banc. * * * Consideration en banc is not favored and will not be ordered unless necessary to secure or maintain uniformity of decisions within the district on an issue that is dispositive in the case in which the application is filed.

**Kellie Auto's Application for En Banc Review**

{¶ 22} Kellie Auto did not set forth a separate argument as to why en banc review should be granted with regard to any conflict with *Harris* and *Hal*. As best we can determine, the request is based on the same arguments regarding *Harris* and *Hal* made in support of their application for reconsideration. For the same reasons we have articulated above in our discussion of *Harris* and *Hal*, we reject Kellie Auto's argument that an intradistrict conflict exists between the first reconsideration decision and *Harris* and *Hal*. Therefore, we deny Kellie Auto's application for en banc review pursuant to App.R. 26(A)(2) with regards to *Harris* and *Hal*.

{¶ 23} Kellie Auto also did not set forth a separate argument as to why en banc review should be granted with regard to any conflict with the original decision. We will note, however, that we have vacated the original decision, and therefore no intradistrict conflict exists between "two or more decisions of the court" under App.R. 26(A)(2)(a). Now, only one decision in this case, the first reconsideration decision, remains operative for purposes of precedent. In order for a conflict to exist, both decisions must present as controlling authority, thereby creating risk of confusion.

{¶ 24} Recognizing this limitation, this court denied en banc consideration in *Stanley Miller Constr. Co. v. Ohio School Facilities Comm.*, 192 Ohio App.3d 676, 2011-Ohio-909 (10th Dist.), because the allegedly conflicting prior case had been overruled by intervening decisions of this court in other cases. "The issue * * * has therefore been settled in this district. As a result, no conflict exists and en banc consideration is not necessary." *Id.* at ¶ 4, citing *McFadden v. Cleveland State Univ.*, 180 Ohio App.3d 810, 2009-Ohio-362, ¶ 9 (10th Dist.), *discretionary appeal not allowed, 06/17/2009 Case Announcements*, 2009-Ohio-2751 (generally recognizing that conflict existed, at the latest, when an earlier case was already overruled, and therefore "there is no risk of confusion regarding the law applicable to this case and cases like it").

{¶ 25} The same reasoning applies even more forcefully in the present case in which the new panel decision necessarily replaces the first entirely, rather than merely rejecting its reasoning. Just as no conflict can exist between two decisions of this court when one of

those has been overruled by statute or a higher court, no conflict can exist between a standing case of this court and one that has become a nullity for purposes of precedent.

{¶ 26} Second, adopting Kellie Auto's position will require App.R. 26(A)(2) en banc proceedings in most cases in which a panel grants App.R. 26(A)(1) reconsideration and modifies its reasoning or judgment.  There is no indication the en banc rule was intended to supplant ordinary panel reconsideration, if for no other reason that the rules currently exist in parallel and no effort was made to modify App.R. 26(A)(1) when (A)(2) was promulgated.

{¶ 27} Therefore, we deny Kellie Auto's application for consideration en banc pursuant to App.R. 26(A)(2) with regard to the original decision.

**Conclusion**

{¶ 28} For the reasons stated above, we deny Norman's September 9, 2020 application for partial reconsideration.  For the reasons stated above, we deny Kellie Auto's September 14, 2020 application for reconsideration and application for consideration en banc.

*Norman's application for partial reconsideration denied;*
*Kellie Auto's application for reconsideration denied;*
*and Kellie Auto's application for consideration en banc denied.*


NELSON, J., concurs.
BRUNNER, J., concurs in part and dissents in part.

NELSON, J., concurring.

{¶ 29} My concurrence on reconsideration noted that reconsideration was necessary because the original decision ran afoul of two important statutes: the Arbitration Act and the Consumer Sales Practices Act.  To my mind, the original opinion made obvious errors and advanced a decision unsupportable under the law, both when it decided that a trial court somehow has authority under the Arbitration Act to modify an arbitrator's decision based not on any mistake in the award but on conduct a party undertakes *after* the award has issued, and when it altered the CSPA by allowing a supplier to circumvent its own arbitration contract and escape treble damage provisions by withholding any proffered "cure" proposal until after arbitration proceedings are complete and the award has issued. *See Norman*, 2020-Ohio-4311, ¶ 45-49 (concurrence).  On neither count is that the law the General Assembly has adopted, and it should not be the law in this judicial district.

{¶ 30} As my earlier concurrence further noted, and as we restate above, to apply the arbitration statutes by their terms does not strip suppliers of the protections offered by the cure provisions of the CSPA. The Arbitration Act applies here only by virtue of both parties having agreed to the arbitration procedures Kellie Auto proposed, and Kellie Auto made no cure offer for the arbitrator even to assess. *See Norman*, 2020-Ohio-4311, at ¶ 48 (Nelson, J. concurring and emphasizing CSPA text indicating that any operative cure offer must precede any award in binding arbitration); R.C. 1345.092(D)(2) and (G)(1). This court has no warrant to ignore or set aside the terms of either enactment, as the earlier extra-statutory modification of the arbitration award would have done.

{¶ 31} Because as a member of the panel for this case I believe myself obliged to conform our decision with the law, I concur in the majority opinion.


BRUNNER, J., concurring in part and dissenting in part.

## I.  INTRODUCTION

{¶ 32} I respectfully concur in part with and dissent in part from the majority and concurring decisions on the parties' second application for reconsideration of *Norman v. Kellie Auto Sales, Inc.*, 10th Dist. No. 18AP-32, 2019-Ohio-360 ("original decision"), and our first decision on reconsideration, *Norman v. Kellie Auto Sales, Inc.*, 10th Dist. No. 18AP-32, 2020-Ohio-4311 ("first reconsideration decision").

## II. EXPLANATION OF CONCURRENCE IN DENYING NORMAN'S APPLICATION FOR RECONSIDERATION

{¶ 33} I concur in part with the majority to the extent that Norman is not entitled to reconsideration wherein he seeks that we vacate our previous decision in part and remand to the trial court certain questions concerning a post-arbitration award of attorney fees. I agree with the majority and concur in that portion of the majority decision at paragraphs 8 and 9. I also concur for the additional, separate reason that there is procedural difficulty in vacating one or both of our previous decisions on the merits, as is discussed more fully at a later point in this separate opinion.

## III.  EXPLANATION OF DISSENT FROM DENYING KELLIE AUTO SALES, INC.'S SECOND MOTION FOR RECONSIDERATION

{¶ 34} I respectfully dissent from both decisions of the majority in this second application for reconsideration, this time, by both parties to the underlying appeal. I first address the application for a second reconsideration made by Kellie Auto Sales, Inc.

Cutting to the chase, no amount of circular argument in support of the majority's opinions will dispel the conclusion that reconsideration should not be used to avoid overruling a previous decision. When an appellate court uses App.R. 26 to "reconsider" a previous decision and makes a complete about face in doing so, it has in effect overruled a previous decision which, in this case, was not unsupportable under the law. The underlying decision was unanimously adopted by three judges. When the new panel majority took the case in a different direction, it would have been more accurate to simply overrule the previously comprised panel than to label what in effect reversed as "obvious error."

{¶ 35} Reconsideration is "not intended for cases in which a party simply disagrees with the reasoning and conclusions of the appellate court." (Citations omitted.) *Hal v. State Dept. of Edn.*, 10th Dist. No. 18AP-301, 2020-Ohio-204, ¶ 2. We do not permit parties to rehash arguments nor raise issues that either were "not fully considered nor demonstrate an obvious error" that may "render a decision unsupportable under the law." *Id.* Likewise, it is not appropriate for a different panel that disagrees with the reasoning and conclusions of a previous panel to find obvious error when that decision is supportable under the law.

{¶ 36} This author has previously argued that "obvious error" first of all should be defined, and when defined, it should rely on caselaw *from our own district* that defines it as a decision not supportable under the law. *See Hal* and *State v. Harris*, 10th Dist. No. 13AP-1014, 2014-Ohio-672, ¶ 8. The author in the majority decision argues that *Harris* uses the conjunctive "or" between "obvious error" and rendering an "unsupportable decision under the law." *Harris* at ¶ 8, quoting *Corporex Develop. & Constr. Mgt., Inc. v. Shook, Inc.*, 10th Dist. No. 03AP-269, 2004-Ohio-2715, ¶ 2, quoting *State v. Owens*, 112 Ohio App.3d 334, 336 (11th Dist.1996). The majority then holds that "unsupportable under the law" need not be the only definition, but still does not define just what is "obvious error" for the purposes of reconsideration. This means the question remains unresolved how a prior decision can in one instance be supportable under the law and at a later instance obvious error. The majority in paragraph 17 and the separate, concurring opinion in its first paragraph express that the original decision was not supportable under the law, despite there being a unanimous panel on the question. This at least edges us closer to the appropriate use of App.R. 26 to achieve this complete change in the law of this case.

{¶ 37} But with a continuing failure to define in any meaningful way "obvious error," this panel perpetuates the amorphous and inconsistent application of App.R. 26. Obvious

error, then, is what we say it is, but we can't tell litigants what it is with any precision to help them understand when App.R. 26 *should* be used to posit genuine new arguments to make the law better. Failing to define "obvious error" lends no faith to the rule's operation for a predictable process. And with great respect for the concerns posited in the majority opinion, continuing not to define "obvious error" creates no real safety for future flexibility in a genuine effort to get the law right and make it work for people. We would be better off to define it now and expand the definition as the need arises.

{¶ 38} Taking a prospective view, continuing not to define "obvious error" perpetuates a lack of transparency in the application of App.R. 26, a procedural statute. Defining procedures lead to transparency of processes and confidence in the outcome. That this same procedural question—what is obvious error?—remains unaddressed, will continue to sow doubt about this App.R. 26's efficacy, use, and application. And while these points I make are seemingly abstruse points, suffice it to say, it is the minor irritant that often becomes the acid that decays confidence in the ability of the rule of law to bend toward justice.

{¶ 39} Since the majority addressed arguments focused on the plain meaning application of the two statutes that occurred in the original decision in this case, I will briefly address, again, why the plain meaning must be respected and observed when the state's Consumer Sales Practices Act and Arbitration Act are read and applied together. It is readily apparent that the applications of the two statutes in the original decision of this case did not necessarily lead to a pleasing outcome. But if the interpretations and applications are supportable under the law, reconsideration is not to be used for creating a better outcome.

{¶ 40} Reconsideration is for correcting real legal errors that cannot stand. *Hal*; *Harris.* So the question becomes, does a plain meaning application of Ohio's arbitration statutes and the Consumer Sales Practices Act render the original decision in this case supportable under the law?

> "The primary rule in statutory construction is to give effect to the legislature's intention," * * *. When there is no ambiguity, we must abide by the words employed by the General Assembly, * * *, and have no cause to apply the rules of statutory construction, *see Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 22-23. "We 'do not have the authority' to dig deeper than the

> plain meaning of an unambiguous statute 'under the guise of
> either statutory interpretation or liberal construction.' "
> *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75
> N.E.3d 203, ¶ 8, quoting *Morgan v. Adult Parole Auth.*, 68
> Ohio St.3d 344, 347, 1994-Ohio-380, 626 N.E.2d 939 (1994).

*State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, ¶ 15. Moreover, when statutes are read "giving the words [that] the legislature chose their plain and ordinary meanings," if the words of the statute are not ambiguous, *id.* at ¶ 18, the rules of statutory interpretation should not be employed unless the result is absurd, providing an exception to the plain meaning rule. *Id.* at ¶ 22. It appears that the majority on this second reconsideration would find the original decision's result of using the plain meanings of these statutes together absurd.

{¶ 41} The principle of absurd result is "premised on a guiding principle of statutory construction: that when the General Assembly enacts a statute, it does not intend to produce an absurd result. *See* R.C. 1.47(C). The starting point of that analysis is the language of the statutory provision. *See Canton v. Imperial Bowling Lanes, Inc.*, 16 Ohio St.2d 47, 53, 242 N.E.2d 566 (1968)." *Clay* at ¶ 22. An absurd result is one that is an "obviously unintended result." *Id.* at ¶ 26, quoting Scalia & Garner, *Reading Law*: *The Interpretation of Legal Texts* 239 (2012) (" ' The doctrine of absurdity is meant to correct obvious *unintended* dispositions, not to revise purposeful dispositions that, in light of other provisions of the applicable code, make little if any sense [emphasis sic].')."

{¶ 42} It is not out of the realm of possibility that the Ohio General Assembly contemplated the outcome set forth in the original decision. Perhaps the legislature preferred a weakened application of the state's Consumer Sales Practices Act when read in conjunction with the state's Arbitration Act. Some recent examples of legislative history suggest that it may have. *See, e.g.*, S.B. No. 185, 126th General Assembly, which limited consumers' noneconomic damages and limited damages against certain assignees in mortgage transactions.[5] In 2011, the Ohio General Assembly created the right to cure in

---

[5] *See, e.g.,* newly created R.C. 1345.091 in S.B. No. 185:

> SEC. 1345.091. NO CLAIM OR DEFENSE UNDER THIS CHAPTER MAY
> BE ASSERTED BY THE ATTORNEY GENERAL OR ANY CONSUMER
> AGAINST AN ASSIGNEE OR PURCHASER OF A MORTGAGE LOAN FOR
> VALUE UNLESS ANY ONE OF THE FOLLOWING APPLIES:

the Consumer Sales Practices Act, allowing consumers and suppliers as defined in that act to enter into a right to cure agreements (at issue in part in this appeal). *See* H.B. No. 285, 129th General Assembly, eff. 7/3/2012. In 2012, the Ohio General Assembly removed consumer remedies arising under most home construction services contracts from the operation of the Consumer Sales Practices Act, creating a separate statute, R.C. 4722.01 et seq, setting forth requirements for its application, henceforth preventing homeowners from availing themselves of the generalized consumer protections of R.C. 1345 et seq. *See* H.B. No. 383, 129th General Assembly, File No. 107, eff. 8/31/2012. Thus, the plain meaning and resulting application of the two statutes involved—Consumer Sales Practices Act and the state's Arbitration Act—may not necessarily create a legally absurd result that the legislature did not intend.

{¶ 43} The state's high court has explained the difference between an "absurd result," and an "absurd consequence as a result" and they are not the same. *Clay* at ¶ 25. I believe that this panel has found "obvious error" in what it has found to be an "absurd consequence" of the previous panel's reading and application of the plain meaning of the two legislative enactments taken together. While admirable, this court cannot step in for the legislature to correct what it perceives to be unreasonable, unless the result is truly absurd. In situations like this, when statutory law is read in its plain language (as we are first required to do) and given its effect, the "fix" is not one to be made by this court or a new panel of this court. Rather, the "fix" must be made by the legislature, presumably made in response to public outcry for perceived unfairness of the application or even on reading a court's reading and application of its plain meaning.

{¶ 44} When we observe the boundaries of our branch of the state's government, we illuminate problems with legislation to permit the Ohio General Assembly to determine whether it simply wanted what we think may be bad policy or whether it made an error. This is the case, as long as the problems challenged by way of litigation and appeal are not

---

(A) THE VIOLATION WAS COMMITTED BY THE ASSIGNEE OR PURCHASER.

(B) THE ASSIGNEE OR PURCHASER IS AFFILIATED BY COMMON CONTROL WITH THE SELLER OF THE LOAN AT THE TIME OF SUCH ASSIGNMENT OR PURCHASE.

2005 Ohio S.B. No. 185.

unconstitutional or so absurd that, "[i]f strict construction of a statute would result in 'unreasonable or absurd consequences,' a construing court may reject the strict-construction doctrine, because courts must presume that the legislature enacted a statute for a 'just and reasonable result.' [*Columbia Gas Transmission Corp. v. Levin,* 117 Ohio St.3d 122, 2008-Ohio-511], citing *Gulf Oil Corp. v. Kosydar*, 44 Ohio St.2d 208 (1975), paragraph two of the syllabus, and R.C. 1.47(C)." *Clay* at ¶ 23.  Here, I perceive that the plain reading of the two statutes and applying them as read is what the legislature intended and that the "fix" should be taken up by the Ohio General Assembly.  As the Supreme Court of Ohio has stated, "[i]f after reflection on our decision, the General Assembly finds that its original intention was not accomplished in the words that it chose, then it, and it alone, has the constitutional authority to amend the statute to conform to its intention."  *Clay* at ¶ 40.

{¶ 45}  I err on the side of restraint, because there is danger in nudging the bright lines separating the powers of the state's three branches of government, no matter how well-intentioned to make a statute or two statutes in tandem "work better."  Courts do not have the resources or wherewithal to rewrite legislation—a process that involves public debate.  We debate the legal questions of the day in the cloisters of our chambers.  Despite the outcome of the original decision in this case, our role is to follow first the plain language in the statutes, also keeping in mind that our jurisdiction is constitutionally determined by the state legislature and that judgments of the courts of appeals are final, except as to appeals accepted by the Supreme Court according to Ohio Constitution, Article IV, Section 3(B)(2) and (3).[6]

{¶ 46}  While the subsequent panel majority has endeavored to "fix" an unpleasing outcome, it can only fix absurd or unreasonable results achieved by a plain reading of the statutes by thereafter applying the rules of statutory interpretation. *Clay* at ¶ 5.  It cannot use App.R. 26's "obvious error" analysis (whatever that may be) on reconsideration to relabel a decision that is clearly supportable under the law as "obvious error," especially

---

[6] "Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district, except that courts of appeals shall not have jurisdiction to review on direct appeal a judgment that imposes a sentence of death.  Courts of appeals shall have such appellate jurisdiction as may be provided by law to review and affirm, modify, or reverse final orders or actions of administrative officers or agencies. (3) A majority of the judges hearing the cause shall be necessary to render a judgment. Judgments of the courts of appeals are final except as provided in section 2(B)(2) of the article."  Ohio Constitution, Article IV, Section 3(B)(2) and (3).

when it refuses to define what "obvious error" is. Under its current status, upon disagreement, at the very least, the subsequent panel should have overruled the earlier unanimous decision and not vacated the earlier decision, when it substituted its own judgment in a new one.

{¶ 47} Finally on this point, I respectfully continue to point out that vacating previous decisions is neither authorized nor supported under App.R. 26 or even the Ohio Constitution for that matter, because nowhere in the Rules of Appellate Procedure are we authorized to vacate our own decisions. And the Ohio Constitution provides that our decisions when rendered are final. Ohio Constitution, Article IV, Section 3(B)(3). The majority's address vacating our own final decisions, move the problem down the road, leaving litigants with uncertainty and subjecting counsel and their clients to unwarranted angst and even financial hardship. For this reason, I further incorporate by reference my earlier discussion of this issue in the first decision on reconsideration as if fully incorporated in this second decision on reconsideration.

{¶ 48} It is for these reasons that I respectfully dissent from the majority's decisions on the parties' second application for reconsideration. Under *Clay,* there is support for acting on the presumption that "the legislature enacted a statute for a 'just and reasonable result' by stopping our analysis at the plain meanings and applications of the two statutes as was accomplished by the original decision." *Clay* at ¶ 23, citing *Kosydar,* 44 Ohio St.2d at paragraph two of the syllabus, and R.C. 1.47(C).

## IV.   EXPLANATION OF CONCURRENCE IN DENYING KELLIE AUTO SALES, INC.'S APPLICATION FOR EN BANC CONSIDERATION

{¶ 49} Regarding Kellie Auto Sales, Inc.'s application for en banc consideration, this court in *Jezerinac v. Dioun,* 10th Dist. No. 18AP-479, 2020-Ohio-587, examined whether it would consider en banc these precise questions regarding "obvious error" and vacating prior decisions on reconsideration under App.R. 26. The court failed to reach a majority in favor of considering these questions en banc. Therefore, I would not pursue a futile act by dissenting from the decision of the majority and thereby effecting a process whereby the Court must consider these identical questions again. I do not anticipate a different outcome. Moreover, the Supreme Court has accepted jurisdiction to hear an appeal of our decision on reconsideration in *Jezerinac* as to whether a new panel of an appellate court may reverse the decision of a prior panel of the court. *Jezerinac v. Dioun,* ___ Ohio St.3d

___, 2020-Ohio-4232 (slip opinion).  Therefore, I concur with the majority in denying Kellie Auto Sales, Inc.'s application for en banc consideration.

## V.  CONCLUSION

{¶ 50}  I concur with the decisions of the majority as to Norman's application for reconsideration and as to Kellie Auto Sales, Inc.'s application for en banc consideration of the issues maintained in this appeal and the subsequent issues raised via App.R. 26 applications for reconsideration.  I dissent from the denial of Kellie Auto Sales, Inc.'s second application for reconsideration as expressed by the majority for the reasons stated in this separate opinion.

––––––––––––––––